# Richmond.

## COMMONWEALTH v. LARKIN.

### November 19th, 1891.

1. COUPONS—*Genuineness*—*Experts.*—Upon trial of an issue as to the genuineness of alleged coupons cut from Virginia State bonds, a witness cannot be allowed to testify as an expert to establish their genuineness until it has been shown, or until he testifies to such facts as show that he is such expert, and his own testimony that he *believed* himself to be such expert;

HELD:
    Insufficient basis for the admission of his evidence as an expert.

2. IDEM—*Instructions.*—Upon such trial an instruction that it was "not necessary, independently of any collateral litigation to establish the genuineness of coupons before or after tender, to entitle a tenderer to be free from molestation;"

HELD:
    Erroneous.

Error to judgment of corporation court of city of Lynchburg, rendered September 5th, 1890, at the trial of the indictment against the defendant in error, W. W. Larkin, a licensed attorney, for practicing his profession without a revenue license. Opinion states the case.

*Attorney-General, R. Taylor Scott,* for commonwealth.

FAUNTLEROY, J., delivered the opinion of the court.

The defendant in error pleaded "not guilty" to the indictment, but he filed no special plea, and he relied upon an

alleged tender of coupons. Issue was joined, and, under instructions asked for by the defendant and given by the court, the jury found him " not guilty."

Upon the trial the attorney for the commonwealth tendered and obtained his bill of exceptions, as follows :

" The plaintiff, on the trial of this cause, to sustain the issue on its part, proves that the defendant, W. W. Larkin, was a duly-licensed attorney-at-law, and was practicing as such without having a revenue license, as required by law. That he tendered to the treasurer of Lynchburg, in payment of his license-tax, papers purporting to be coupons cut from the bonds of the state, tax-receivable and past due; that the treasurer of the city of Lynchburg refused to receive them, because the statutes of Virginia prohibited him from receiving them; that he, the said treasurer, did not know whether they were genuine or not ; that the bonds of this state, under the funding acts, required that said bonds should be signed by the state treasurer and auditor, and that the validity of the coupons depended on the proper and lawful issuance of the bond from which they were detached. The defendant, to sustain the issue on his part, proved that he tendered to the treasurer of the city of Lynchburg the amount of his license in coupons, which he believes to be genuine coupons, past-due and tax-receivable, and cut from the bonds of this state; that he had never seen the bonds from which said coupons were cut, but that he had handled many thousand dollars' worth of coupons, and that he believed himself an expert, and believes the coupons tendered were genuine; that said coupons were still in his possession, and that he was ready to pay them over for his license; and thereupon he paid the same into court."

Upon this testimony the court gave three instructions to the jury, the first of which was not objected to.

The second instruction is : After the defendant showed he believed himself to be an expert in reference to the genuineness of the coupons tendered, and that he believed those to be

genuine he tendered in this case, the burden of proving non-genuineness is shifted to the commonwealth; and if the commonwealth do not show non-genuineness, the jury must find the defendant not guilty.

The plea of *tender* confessed the charge in the indictment that the license-tax imposed by law upon the accused had not been paid, and it could only be a good defence when fully and properly proved; the *onus probandi* as to the genuineness of the coupons tendered was upon the *tenderer*. He must prove everything necessary to constitute a legal tender. In support of his plea Mr. Larkin was the only witness for the defence, and he testified to no facts which showed him to be an *expert*, with knowledge, experience, or skill, which made him competent to testify as to the genuineness and tax-receivability of the coupons tendered by him in payment of his license-tax. He had never seen the bonds, or any bonds, from which they had been cut; and, for aught that he knew or testified, *non constat* that they had ever been attached to any bond or legal obligation of the state of Virginia. They were mere printed or lithographed detached papers, which might have been printed or lithographed, and put in circulation by irresponsible parties, either attached or unattached, to simulated and unauthorized bonds. He merely expressed his *belief* that he was an expert; but he did not testify to any information, skill, or experience in printing, lithographing, or testing the genuineness of coupons, which could make him *expert* to detect and pronounce the spurious from the genuine coupon in circulation. Larkin's testimony was fatally defective, and it is clear, from the record, that he is not an expert as to the matter to which he undertook to testify, and that there was no expert witness before the jury. Yet the instruction of the court to the jury was that if he showed *he believed* himself to be an expert, the burden of proving the genuineness of the coupons tendered by him was shifted from him to the commonwealth, who must prove the non-genuineness of the coupons tendered by him. As formu-

lated, there was no evidence which called for this instruction, and none to support it. It does not propound the law of the case as proved to the jury; it is defective and vicious; and the trial court erred in giving it.

The third instruction told the jury, without prelude, explana-tion, or qualification, "Not necessary, independently of any collateral litigation, to establish the genuineness of coupons, before or after tender, to entitle a tenderer to be free from molestation."

This repeats the vice of the second instruction, and gives a charter, *ad libitum*, to tender spurious coupons, and to be exempt, absolutely, from all obligation or requirement of proof of genuineness.

The instructions were wholly erroneous, and misled the jury. The verdict must be set aside, the judgment reversed, and the case remanded to the corporation court of the city of Lynch-burg for a new trial.

JUDGMENT REVERSED.